**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JARVIS PERRY, <br><br> Plaintiff, <br><br> v. <br><br> NEW JERSEY DEPARTMENT OF CORRECTIONS, an Administrative Department of the State of New Jersey; CHRISTOPHER BIRARDI, individually and in his Supervisory capacity as a Supervisory Officer with Defendant NJDOC; JENNIFER CAIGNON, individually and in her Supervisory capacity as a Supervisor with Defendant NJDOC's Human Resources Department; and DUANE GRADE, individually and in his Supervisory capacity as a Chief Investigator with Defendant NJDOC, <br><br> Defendants. | Civil Action No. 21-03523 (GC) (RLS) <br><br> **MEMORANDUM OPINION** |

**CASTNER, District Judge**

This matter comes before the Court on motions for summary judgment, pursuant to Federal Rule of Civil Procedure ("Rule") 56, filed by Defendants New Jersey Department of Corrections (NJDOC) and Duane Grade (collectively, "NJDOC Defendants") (ECF No. 45) and Defendant Christopher Birardi (ECF No. 46). Plaintiff Jarvis Perry opposed both motions (ECF No. 55 (Opp'n to Birardi's Mot.); ECF No. 56 (Opp'n to NJDOC Defs.' Mot.)), and the moving defendants replied (ECF No. 57 (Birardi's Reply); ECF No. 58 (NJDOC Defs.' Reply)). The Court has carefully considered the parties' submissions and decides the motion without oral argument

pursuant to Rule 78 and Local Civil Rule 78.1.  For the reasons set forth below, and other good cause shown, NJDOC Defendants' Motion is **GRANTED**, and Birardi's Motion is **GRANTED**.

## I.       BACKGROUND[1]

### A.  Procedural History

On or about February 1, 2021, Plaintiff filed a seven-count Complaint against NJDOC, Grade, Birardi, and Jennifer Caignon.  (*See* ECF No. 1.)  Plaintiff later voluntarily dismissed the count against Caignon.  (ECF No. 17.)  Plaintiff alleges race discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5-1 and 10:5-12.  (*See generally* ECF No. 1.)

### B.  Facts Undisputed, or Substantiated by Record Evidence

Plaintiff began working with NJDOC in 2001 as a Corrections Officer at South Woods State Prison ("SWSP").  (ECF No. 1 ¶ 13.)  He rose through the ranks and in 2016 became a Senior Investigator.  (*Id.*)  Between June 2018 and September 2019, Plaintiff served as such in NJDOC's Parole and Secured Facilities.  (*Id.*; ECF No. 46-2 ¶ 1.)  During most of this time, Birardi was Plaintiff's supervisor.  (ECF No. 46-2 ¶ 2.)  Chief Investigator Grade was also a supervisor at SWSP.  (ECF No. 48 ¶ 4.)

As a Senior Investigator, Plaintiff's duties included, among other things, preparing reports; handling evidence; conducting certain internal and external investigations; maintaining records for such investigations; and, if necessary, testifying in judicial proceedings.  (ECF No. 48 ¶ 2; ECF

---

[1]     On a motion for summary judgment, the Court "draw[s] all reasonable inferences from the underlying facts in the light most favorable to the nonmoving party." *Jaffal v. Dir. Newark New Jersey Field Off. Immigr. & Customs Enf't*, 23 F.4th 275, 281 (3d Cir. 2022) (quoting *Bryan v. United States*, 913 F.3d 356, 361 n.10 (3d Cir. 2019)).

No. 46-2 ¶¶ 3-4; *see also* ECF No. 46-3 at 32-35.[2])  As of October 2018, Plaintiff was also the custodian of the SWSP Evidence Room.  (ECF No. 46-2 ¶ 5.)  Prior to assuming the role, Plaintiff "completed an audit of the [SWSP] Evidence Room" to ensure that "all items are accounted for." (ECF No. 46-2 ¶ 6; ECF No. 47 at 190.)  Plaintiff then advised Birardi that he had inventoried the Evidence Room, all evidence was accounted for, and he would take responsibility as the lead investigator of the Evidence Room.  (ECF No. 47 at 191.)

### 1.  Plaintiff's First EED Complaint

On March 18, 2019, Plaintiff filed an internal complaint with NJDOC's Equal Employment Division (EED), alleging that Birardi was discriminating against Plaintiff based on race.  (ECF No. 45-4 at 22-29; *see* Pl. Dep. 106:20-22.[3])  Plaintiff wrote: "I have been harassed because I am the only African American assigned to [SWSP]."  (ECF No. 45-4 at 23.)  The following are undisputed summaries of the specific allegations that Plaintiff detailed in support of his complaint:

- On November 13, 2018, Birardi called Plaintiff into his office and stated that Plaintiff had been displaying a pattern of behavior suggesting that he was troubled. When pressed for more detail, Birardi explained that Plaintiff had been late to a morning meeting, had slammed the door behind him when he arrived, and had been late to a lunch gathering that same day.

- On January 14, 2019, Birardi informed Plaintiff that it was Special Investigations Division ("SID") policy that if an investigator's "on-call" day falls on a Monday that is a holiday, the investigator must remain "on-call" for the following Tuesday.

- On February 26, 2019, Birardi sent Plaintiff an email stating that the on-call investigator is now required to wash Birardi's vehicle, as well as other State vehicles.

---

[2]      Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[3]      Excerpts of Plaintiff's deposition transcript in the summary-judgment record are at ECF No. 45-4 at 30-77 and ECF No. 46-3 at 86-133.

- On March 15, 2019, Senior Investigator John Kline, who is white, had not completed a monthly report, and Birardi ordered Plaintiff to complete it "immediately."

- On March 18, 2019, Birardi ordered Plaintiff to make corrections to a report. Specifically, Birardi asked Plaintiff to incorporate "the main points from each paragraph" into his conclusion. Plaintiff made the requested corrections and resubmitted the report, but Birardi then instructed Plaintiff to "shorten" his conclusion. Birardi then ordered further revisions to the report, including the incorporation of photographs and written descriptions of the photographs.

(ECF No. 48 ¶¶ 6-10; ECF No. 1 ¶¶ 17-25; *see also* ECF No. 45-4 at 29.)

The EED investigated Plaintiff's complaints of racial discrimination and found them to be unsubstantiated. (*See* ECF No. 45-4 at 82-84.) In a letter dated November 12, 2019, the EED detailed several determinations as to Plaintiff's allegations, listed here in the order the allegations appear above. First, Birardi regularly checked on all of his investigators, and Plaintiff did in fact close the door loudly. (*Id.* at 83.) Second, when Birardi learned of his error about the impact of Monday holidays on investigators' on-call days, Birardi apologized to Plaintiff, and Plaintiff never served an additional on-call day. (*Id.*) Third, Birardi sent the car-wash email to all investigators, not to Plaintiff alone, and the union intervened so no one had to wash Birardi's vehicle. (*Id.*; *see also* ECF No. 46-3 at 46.) Fourth, Birardi directed Plaintiff to complete only Plaintiff's portion of the monthly report, "which historically . . . took [Plaintiff] 10-15 minutes to do." (ECF No. 45-4 at 83.) Fifth, and finally, "Birardi 'orders' [Plaintiff] to do things because [Plaintiff] say[s] no when he asks [Plaintiff] to complete a task," and "Birardi has had every SID investigator in the office resubmit investigation reports." (*Id.*)

    2.  Post-Complaint Allegations of Retaliation

      a.  Vehicle-Retrieval Order

Plaintiff alleges that on or about April 11, 2019, "[i]n retaliation for filing the internal complaint, . . . Birardi directed Plaintiff to retrieve a vehicle from the Central Office on the

following day." (ECF No. 1 ¶ 26.)  The next day, April 12, while speaking with Birardi about the task, Plaintiff began openly recording their conversation out of concern that Birardi would lie about what transpired and Plaintiff would be reprimanded.  (*See* Pl. Dep. 115:4-116:14.)  Also that day, Plaintiff sent Birardi an email recounting the prior day's events; noting that Birardi told Plaintiff, "I need you and Justine [DiPaolo]" — who is white — "to report to Central Office tomorrow (April 12, 2019) to pick up the other state vehicle"; and questioning why "[y]ou did not ask me if I had anything to do[,] you just told me what you wanted me to do."  (ECF No. 46-3 at 168.)

b.  Letter of Counseling

That same day, April 12, Plaintiff went to retrieve the vehicle from Central Office.  (Pl. Dep. 115:4-116:14.)  While Plaintiff was there, Grade issued him a letter of counseling stating that he (1) "questioned [his] Supervisor as to the directive" to retrieve the vehicle, and (2) "displayed and utilized a recording device telling [his] Supervisor 'I need to protect myself.'"  (ECF No. 46-3 at 51; ECF No. 46-2 ¶¶ 33-34; ECF No. 48 ¶¶ 31-32.)

3.  Plaintiff's Second EED Complaint

On July 1, 2019, Plaintiff filed a second EED complaint, this time alleging that "he was being subjected to continuing retaliation by Defendant Birardi after the filing of the first internal complaint."  (ECF No. 1 ¶ 32; *see also* ECF No. 45-4 at 92-96.)  This complaint came shortly after Plaintiff emailed Birardi to confront Birardi's order that Plaintiff accompany another investigator to an inmate view — a task that was within the scope of Plaintiff's duties as a Senior Investigator (ECF No. 46-2 ¶ 41) — stating that "I am never given the same opportunities as the other Investigators here at SWSP.  Where other Investigators are asked, I am told what to do.  This is not fair and it continues to happen" (ECF No. 46-3 at 54; *see also* ECF No. 48 ¶¶ 34-36).

The EED investigated Plaintiff's claims of retaliation and, once again, determined that they were unsubstantiated. (*See* ECF No. 45-4 at 98-99.) The EED found that Plaintiff's evidence and witnesses failed to support his allegations; that there was no evidence to corroborate Plaintiff's claim of adverse treatment based on his membership in a protected category; that, to the contrary, Plaintiff "was provided more opportunities than other Investigators," as Plaintiff was "offered to be PI Birardi's second in command, which [Plaintiff] refused," and was "approved to attend the prestigious Top Gun Training"; and that "Birardi had a legitimate business reason for ordering [Plaintiff] to attend the Inmate View." (*Id.*)

4. Evidence Room Audit

In September 2019, an audit of the Evidence Room was undertaken. (ECF No. 48 ¶ 43.) By email dated September 17, 2019, Birardi advised Plaintiff that he was "removed of all functions and duties related to Evidence." (ECF No. 46-3 at 61.) In response to Plaintiff's assertion that his removal was "another retaliation against me by PI Birardi," Edward Soltys (Birardi's immediate supervisor) advised Plaintiff that "the direction to PI Birardi came from [Central Office Headquarters] and based on the totality of information received, is an appropriate directive." (ECF No. 46-3 at 62; *see* Pl. Dep. 42:14-15.) Following his removal, Plaintiff requested, and was granted, an immediate transfer to Central Offices with the same pay and benefits. (ECF No. 46-3 at 63-64; ECF No. 46-2 ¶ 62.)

The audit revealed numerous discrepancies as to "the manner in which evidence was received (chain of custody), logged, processed and stored," including "missing items and a failure to comport with" relevant procedures. (ECF No. 48 ¶ 44; ECF No. 47 at 166-89.) As a result, Grade issued Plaintiff a Preliminary Notice of Disciplinary Action ("PNDA") for conduct unbecoming a public employee and neglect of duty for failure to maintain the evidence room.

6

(ECF No. 46-2 ¶ 53; *see also* ECF No. 46-3 at 59.)  Plaintiff then initiated a disciplinary appeal proceeding with the Office of Employee Relations.  (ECF No. 46-2 ¶ 54; ECF No. 46-3 at 66-85.)

The appeal proceeding took place over two days, on March 19 and April 6, 2021.  (ECF No. 46-2 ¶ 55.)  During the proceedings, Plaintiff was represented by an attorney, and was permitted to, and did, cross-examine witnesses, call witnesses, and present documentary evidence. (ECF No. 46-2 ¶ 56.)  Birardi was not called as a witness and did not otherwise participate in Plaintiff's disciplinary hearing.  (ECF No. 46-2 ¶ 57.)  At the conclusion of the hearing, the hearing officer found that there were "many discrepancies[4] which took place during [Plaintiff's] tenure as the investigator responsible for maintaining the integrity of the evidence room," but the hearing officer attributed these discrepancies to a heavy workload and insufficient training.  (ECF No. 46-3 at 77-78.)  Ultimately, the hearing officer recommended that Plaintiff be issued a letter of counseling and undergo retraining.  (ECF No. 48 ¶ 51.)  Plaintiff has presented no facts to contradict the hearing officer's factual findings.  (ECF No. 46-2 ¶ 59.)

Following the hearing, NJDOC offered Plaintiff his same position with NJDOC, which he declined.  (*Id.* ¶ 64.)  On August 1, 2021, Plaintiff voluntarily retired from NJDOC.  (ECF No. 48 ¶ 67.)  As of March 2022, Plaintiff had not searched for work.  (ECF No. 46-2 ¶ 66.)  Plaintiff testified that while at NJDOC, he was "never demoted," never suspended, did not lose any money, and "[a]ll my PARs were good."[5]  (ECF No. 48 ¶¶ 58-62; ECF No. 46-2 ¶¶ 42; Pl. Dep. 39:23-40:17.)

---

[4]     The hearing revealed that of the thirteen items that could not be accounted for in the evidence room, most were narcotics, one was contraband, and one was a weapon; that one piece of evidence sat for one hundred forty-nine days before it was retrieved; and that at least four items that were recorded as "burned" were in the evidence room.  (ECF No. 48 ¶¶ 48-49; ECF No. 45-4 at 108.)

[5]     In his Complaint, Plaintiff alleges that he filed two more internal complaints of retaliation, on October 23 and November 12, 2019 (ECF No. 1 ¶¶ 34, 36), but those complaints were neither

## II.    LEGAL STANDARD

Pursuant to Rule 56, "[s]ummary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.,* 835 F.3d 388, 402 (3d Cir. 2016) (citing Fed. R. Civ. P. 56(a)). "A fact is material if—taken as true—it would affect the outcome of the case under governing law." *M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "And a factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.*

## III.   DISCUSSION

Plaintiff alleges that he suffered two types of adverse actions: (1) he was given "demeaning tasks" that were "not fairly administered" and his disciplines were "manufactured" due to his race, and (2) he was disciplined in retaliation for his internal complaints.  (ECF No. 1 ¶¶ 26-32; ECF No. 56 at 8-9, 11.)

Plaintiff's claims are governed by the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) ("All retaliation and discrimination claims brought under Title VII and the NJLAD, including those based on . . . race, . . . which rely on circumstantial evidence, are controlled by the three-step burden-shifting framework set forth in *McDonnell Douglas* . . . ."). Under the framework, Plaintiff first bears the burden to establish a *prima facie* case of

---

included in the summary-judgment record nor mentioned in Plaintiff's opposition papers (*see* ECF Nos. 55-3, 56-3).

discrimination or retaliation.  For his disparate-treatment claims,[6] Plaintiff must establish that (1) he is a member of a protected class, *i.e.*, that he is African American; (2) he was qualified for the position at issue; (3) he suffered an adverse employment action; and (4) that adverse employment action gives rise to an inference of unlawful discrimination.  *Id.* at 842 (citing *Jones v. Sch. Dist. Of Philadelphia*, 198 F.3d 403, 410-11 (3d Cir. 1999)).  For his retaliation claims, Plaintiff must show "(1) [that he engaged in] protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."  *Daniels v. Sch. Dist. Of Philadelphia*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

Second, if Plaintiff establishes a *prima facie* case, the burden shifts to Defendants to articulate a legitimate nonretaliatory or nondiscriminatory reason for the adverse employment action.  *Tourtellotte*, 636 F. App'x at 842; *Daniels*, 776 F.3d at 193.  Third, Plaintiff bears the final burden to demonstrate that Defendants' proffered reason is a mere pretext through evidence that the provided rationale is false or that the real reason for the adverse action was discriminatory or retaliatory animus.  *Tourtellotte*, 636 F. App'x at 842; *Daniels*, 776 F.3d at 193; *see Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (requiring plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action" (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994))).  More particularly, Plaintiff must demonstrate "such

---

[6]     Plaintiff has "stipulate[d] that he has not purs[u]ed a claim of disparate impact."  (ECF No. 56 at 1 n.1.)

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." *Fuentes*, 32 F.3d at 765 (citing *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992); *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993)).

### A.  Title VII Claims: Race-Based Discrimination (Counts I and II)

Defendants argue that Plaintiff fails to satisfy the third and fourth elements of the *McDonnell Douglas* framework: Plaintiff did not suffer an adverse employment action, and the alleged adverse actions do not give rise to an inference of discriminatory motive.  (ECF No. 45-1 at 16; ECF No. 46-1 at 7.)  The Court agrees.

To constitute an adverse employment action, an employer's conduct "must be 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'"  *Medley v. Atl. Exposition Servs., Inc.*, 550 F. Supp. 3d 170, 196 (D.N.J. 2021) (quoting *Tourtellotte*, 636 F. App'x at 842); *see Ford v. Cnty. Of Hudson*, 729 F. App'x 188, 195 (3d Cir. 2018) (describing an "adverse employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" (quoting *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 152 (3d Cir. 1999))).

There is no dispute that Plaintiff was never suspended or demoted, he never lost pay or benefits, all of his PARs were good, the letter of counseling was removed after six months, and Plaintiff voluntarily retired. (ECF No. 46-2 ¶¶ 37-38, 42, 65; ECF No. 48 ¶¶ 58-62, 67.) Plaintiff instead bases his disparate-treatment claims on several assignments that he believes were

"demeaning," "menial," and "unfairly administered": Birardi ordered Plaintiff to wash Birardi's vehicle; Birardi directed Plaintiff to complete the report of another investigator, who was white; and Birardi attempted "to change the on-call schedule so Plaintiff would have covered an additional day, when no one else was required to do the same." (ECF No. 55-2 at 10; ECF No. 1 ¶¶ 19, 20-22.[7])

Plaintiff claims that he was "singled out because of his race." (ECF No. 56 at 10.)  Because Plaintiff is not pursuing a disparate-impact claim (*see* ECF No. 56 at 1 n.1), Plaintiff must show that NJDOC treated him "'less favorably than others because of' a protected trait," and prove that NJDOC had a "discriminatory intent or motive," *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 483 n.11 (3d Cir. 2011) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 986 (1988)).  To that end, Plaintiff contends that he was "the only African American" in his division[8] and that "similarly situated [w]hite investigators were given the option of accepting or rejecting" the allegedly demeaning assignments.  (ECF No. 56 at 1, 10; *see* ECF No. 56 at 9 ("Plaintiff was indeed the only Black male at his location.").)  But even if Plaintiff's contentions are true, Plaintiff cannot establish an inference of discrimination solely through the fact that Plaintiff was the only member of a protected class in his department.  *See Sessoms v. Trustees of Univ. of PA.*, Civ. No. 16-2954, 2017 WL 2271817, at *5 (E.D. Pa. May 24, 2017), *aff'd*, 739 F. App'x 84 (3d Cir. 2018) (ruling that

---

[7]    Although Plaintiff's first EED complaint also alleged that Birardi was inconsistent in how he reviewed and revised Plaintiff's reports (ECF No. 45-4 at 29), Plaintiff now clarifies that Plaintiff "has no complaints about his own reports being corrected" (ECF No. 55-2 at 10).

[8]    Plaintiff asserts that his former colleague, Donna Alexander, who is also African American, was no longer at Plaintiff's NJDOC location "[a]t the time of most of the events described in Plaintiff's Complaint" (ECF No. 56-2 ¶ 14; *see* ECF No. 48 ¶ 14), though it is undisputed that "Birardi liked Donna Alexander and took her to lunch every day" (ECF No. 48 ¶ 15; ECF No. 56-2 ¶ 15), and Plaintiff's March 18 EED complaint notes that Alexander was present at the time of the November 13 incident (ECF No. 45-4 at 29).

employer's termination of the only disabled person and only African American employee in a department was "not sufficient to raise an inference of discrimination").

The rest of Plaintiff's specific allegations are insufficient to establish a *prima facie* case of disparate treatment.  Plaintiff first argues that Birardi "specifically created the duty to wash vehicles to discriminate" against Plaintiff, because "the first . . . and only person this order impacted was Plaintiff," who "was the only investigator on-call."  (ECF No. 46-2 ¶ 14; ECF No. 1 ¶¶ 20-21; ECF No. 56 at 9.)  The parties agree, however, that "Birardi sent this [car-wash] email to all investigators, instructing that all on-call investigators would be responsible for washing NJDOC-issued vehicles during their on-call week."  (ECF No. 46-1 at 38; ECF No. 55-2 at 10; ECF No. 56 at 9; *see also* Pl. Dep. 103:1-7 (testifying that "[i]t wasn't just me.  It was everybody, but . . . it happened on my on-call . . .").)  Given that, in rendering the order, Birardi treated everyone the same, this cannot support a claim of disparate treatment or discriminatory animus. *See Gress v. Temple Univ. Health Sys.*, Civ. No. 13-5414, 2018 WL 3970436, at *7 (E.D. Pa. Aug. 20, 2018), *aff'd*, 784 F. App'x 100 (3d Cir. 2019) (ruling that supervisor "treat[ing] everyone in the same manner" precluded plaintiff from establishing a *prima facie* case under Title VII).[9]

Second, Plaintiff argues that completing the white investigator's monthly report was "something outside of [Plaintiff]'s scope as an Investigator."[10]  (ECF No. 55-2 at 10.)  Beyond

---

[9]      Another challenge for Plaintiff is that he never actually washed the vehicles.  (ECF No. 48 ¶ 18; ECF No. 46-2 ¶ 20.)  In fact, Plaintiff testified that Birardi's email had "no effect at all" on his ability to complete other tasks at work.  (ECF No. 46-2 ¶ 21; *see also* Pl. Dep. 103:24-104:6.) Such facts have been rejected as adverse employment actions. *See, e.g., Neita v. Precision Pipeline Sols.*, Civ. No. 15-0649, 2018 WL 3151699, at *17 (E.D.N.Y. Feb. 26, 2018), *report and recommendation adopted*, 2018 WL 1605143 (E.D.N.Y. Mar. 31, 2018), *aff'd*, 768 F. App'x 12 (2d Cir. 2019) (finding supervisor's request "to wash his company car" was not adverse employment action where "[p]laintiff never actually washed" the car).

[10]      The parties dispute whether Plaintiff actually completed the investigator's monthly report. Plaintiff testified that he "didn't have to" complete the monthly report.  (Pl. Dep. 65:16-17.) Defendants assert that this meant that Plaintiff did not complete the report (ECF No. 46-1 at 40);

Plaintiff's conclusory assertions of disparate treatment, there is no evidence to support that Plaintiff's race factored into this additional, one-off assignment.  Absent such evidence, Plaintiff's assertions amount to a "subjective belief," which cannot support a disparate-treatment claim.  *See Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013) ("A plaintiff's subjective belief that race played a role in an employment decision is not sufficient to establish an inference of discrimination."); *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 241 (D.N.J. 2015) (ruling that plaintiff's opinion that she received more difficult assignments because of her race was mere conjecture unsupported by facts (citing *Marrero v. Camden Cnty. Bd. Of Soc. Servs.*, 164 F. Supp. 2d 455, 476 (D.N.J. 2001))); *see also Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *2 (3d Cir. Apr. 27, 2023) (holding that supervisors' causing plaintiff "to feel insulted and embarrassed . . . raise no overt or implicit suggestion that the [s]upervisors treated her differently because of her race").

Third, and finally, Plaintiff argues that Birardi attempted "to change the on-call schedule so Plaintiff would have covered an additional day, when no one else was required to do the same." (ECF No. 55-2 at 10.)  But under the present circumstances, asking Plaintiff to cover one additional day, one time, is insufficient to constitute an adverse employment action.  *See Prioli v. Cnty. Of Ocean*, Civ. No. 18-00256, 2021 WL 4473159, at *18 (D.N.J. Sept. 30, 2021) ("Plaintiffs point to merely one isolated incident of [supervisor]'s mandatory overtime, which at most reflects a temporary work arrangement that cannot qualify as an adverse employment action.").  And again, Plaintiff did not actually work the additional day.  Plaintiff concedes that within "a half hour" after

---

Plaintiff asserts that he meant that it "was not his responsibility" (ECF No. 55-2 at 10).  For purposes of summary judgment, the Court accepts Plaintiff's version of the events.

Birardi's order, Birardi learned that he was mistaken, apologized to Plaintiff, and told Plaintiff to disregard the order. (ECF No. 46-2 ¶¶ 26-28; ECF No. 48 ¶ 24.)

Plaintiff has therefore failed to establish that he suffered an adverse employment action or create an inference that discriminatory animus was a motivating factor in the challenged actions. Summary judgment must be granted for Defendants on Plaintiff's disparate-treatment claim. *See Robinson v. Horizon Blue Cross Blue Shield of New Jersey*, Civ. No. 12-2981, 2015 WL 4603647, at *7 (D.N.J. July 30, 2015), *aff'd*, 674 F. App'x 174 (3d Cir. 2017) ("As Plaintiff has offered no evidence to support his claim of race and gender discrimination and that Defendants' justifications are mere pretext, summary judgment must be granted for Defendants." (citing *Jordan v. Allgroup Wheaton*, 218 F. Supp. 2d 643, 651 (D.N.J. 2002), *aff'd sub nom.*, 95 F. App'x 462 (3d Cir. 2004))).

### B. Title VII Claim: Retaliation (Count III)

Defendants next argue that Plaintiff has neither suffered an adverse employment action nor proved a causal link between his complaints of discrimination and his letter of counseling or discipline. (ECF No. 45-1 at 33.)

"[A] plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions 'materially adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "[T]emporal proximity" or "circumstantial evidence of a 'pattern of antagonism' following the protected conduct" may raise an inference that a causal link between the protected conduct and retaliatory action exists. *Kachmar v. SunGard Data Sys., Inc.*,

109 F.3d 173, 177 (3d Cir. 1997) (quoting *Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 895 (3d Cir. 1993)).

Here, Plaintiff alleges that, in retaliation for Plaintiff's complaint of discrimination, Birardi "directed Plaintiff to retrieve a vehicle from the Central Office" (ECF No. 1 ¶ 26), "'facilitated' a letter of counseling against Plaintiff" (ECF No. 55-2 at 11), tended to order rather than ask Plaintiff to perform tasks (ECF No. 48 ¶¶ 34-36; ECF No. 46-2 ¶ 40; *see also* ECF No. 46-3 at 54), and "initiated an audit of the Evidence Room" that led to discipline of Plaintiff (ECF No. 55-2 at 11). The Court examines each allegation in turn.

Plaintiff first contends that Birardi's directive to retrieve the vehicle was retaliatory because "Birardi asked [Plaintiff] to do a menial task, with no regard to his other workload," and "Birardi first gave another Investigator the *option* of performing the task." (ECF No. 55 ¶¶ 30-31; ECF No. 46-2 ¶ 31; ECF No. 55-3 ¶ 5; ECF No. 1 ¶ 26 (emphasis added).) On these bases, Birardi's directive cannot qualify as an adverse employment action. In an email around the time of the directive, Plaintiff recounted that Birardi "told [Plaintiff] 'I need you and Justine [DiPaolo] to report to Central Office tomorrow (April 12, 2019) to pick up the other state vehicle,'" yet neither "Di[P]aolo nor [Plaintiff] was . . . afforded" the opportunity not to retrieve the vehicle. (ECF No. 46-3 at 168.) Plaintiff's email makes clear that his issue was not with the assignment but with Birardi's tone: "You did not ask me if I had anything to do[,] you just told me what you wanted me to do." (*Id.*; Pl. Dep. 119:2-25.) But "[n]ot everything that makes an employee unhappy qualifies as [an adverse employment action], for otherwise, minor and even trivial employment actions that an irritable . . . employee did not like would form the basis of a discrimination suit." *Cortes v. Univ. of Med. & Dentistry*, 391 F. Supp. 2d 298, 312 (D.N.J. 2005) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal quotation

marks omitted)).[11]  Nor can Plaintiff show a causal link between Plaintiff's complaint and Birardi's

directive, as Plaintiff was the third person Birardi had asked to retrieve the vehicle.[12]  (ECF No.

48 ¶ 29; *see also* Pl. Dep. 45:10-23, 114:15-117:2.)

Second, Plaintiff asserts that "Birardi facilitated the issuance of the Letter of Counseling

for no other reason than to retaliate against the Plaintiff for filing the internal complaint three

weeks earlier."  (ECF No. 1 ¶ 30.)  Again, there is no dispute that Plaintiff was not suspended or

demoted and did not lose any pay.  (Pl. Dep. 48:6-8.)  Rather, Plaintiff contends that the letter of

counseling precluded him from taking a promotional test.  But Plaintiff has not proffered anything

to support this contention.  Plaintiff testified that his understanding was based on what someone,

whom he refused to identify, told him; Plaintiff is unaware of any NJDOC policy that does not

permit the taking of a promotion test while discipline is pending.  (*Id.* at 48:10-12, 145:19-147:13.)

The Court therefore agrees with Defendants that the mere issuance of a letter of counseling,

without some indication of detriment, is not an adverse employment action.  *See Reynolds v. Dep't*

*of Army*, 439 F. App'x 150, 153 (3d Cir. 2011) ("We note that a likely consequence of allowing

suits to proceed on the basis of a [performance improvement plan] would be more naked claims of

---

[11]     In addition, Plaintiff does not dispute that there was nothing preventing him from retrieving the vehicle (ECF No. 48 ¶ 30), further bolstering that the request does not amount to an adverse employment action.

[12]     Plaintiff has not provided specific allegations that led to his second EED complaint.  The record indicates that the complaint came shortly after Plaintiff confronted Birardi's order that Plaintiff attend an inmate view: "I am never given the same opportunities as the other Investigators here at SWSP.  Where other Investigators are asked, I am told what to do.  This is not fair and it continues to happen."  (ECF No. 46-3 at 54; ECF No. 48 ¶¶ 34-36; ECF No. 46-2 ¶ 40.)  This task, which was indisputably within the scope of Plaintiff's duties (*see* ECF No. 46-2 ¶ 41), cannot qualify as an adverse employment action, *see Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 254 (S.D.N.Y. 2009) ("No reasonable employee would think being asked to perform tasks that are part of her job description constituted a materially adverse employment action." (citing *White*, 548 U.S. at 69)).  Here, too, Plaintiff's issue with Birardi's tone does not make the order an adverse employment action.

discrimination and greater frustration for employers seeking to improve employees' performance."); *El-Sioufi v. St. Peter's Univ. Hosp.*, 887 A.2d 1170, 1188 (N.J. Super. Ct. App. Div. 2005) ("[A] negative employment evaluation, unaccompanied by a tangible detriment, such as a salary reduction or job transfer, is insufficient to rise to the level of an adverse employment action.")

In addition, even if the letter of counseling were sufficient to constitute an adverse employment action, Plaintiff cannot establish a causal link between his complaints of discrimination and NJDOC's issuance of a letter of counseling.  Plaintiff admitted that he did not know "a hundred percent if Birardi is the one who facilitated the letter" or if Birardi and Grade even discussed the letter.  (ECF No. 48 ¶¶ 52-53; *see also* Pl. Dep. 124:4-125:7.)  By Plaintiff's own admission, the only fact that Plaintiff could identify to support his claim was that "Birardi called Grade to tell Grade about what happened" — that is, according to the letter of counseling, that Plaintiff "questioned [his] Supervisor as to the [car-retrieval] directive" and "displayed and utilized a recording device telling [his] Supervisor 'I need to protect myself.'"  (ECF No. 46-2 ¶¶ 31-32; ECF No. 46-3 at 51-52; Pl. Dep. 124:4-9.)  Finally, even if Plaintiff could establish a *prima facie* case of retaliation, he proffered nothing to rebut NJDOC's legitimate nonretaliatory reason for issuing the letter of counseling: that Plaintiff was insubordinate.  (ECF No. 45-1 at 19; ECF No. 48 ¶¶ 25-30; *see also* ECF No. 46-3 at 51.)

Third, Plaintiff claims, based on "rumors" from "[n]obody in particular," that Birardi ordered the audit of the Evidence Room as retaliation for Plaintiff's earlier complaints of retaliation and discrimination.  (ECF No. 46-2 ¶¶ 43-44, 47; *see also* Pl. Dep. 133:1-4 (testifying that he has no facts that Birardi ordered the audit), 143:25-144:1 (testifying that the request for an audit "came from central office headquarters[,] [s]o that had to come from Chief Grade").)  Plaintiff further

notes that his "belief was based on the fact that [he] had never had any prior issues during his time at NJDOC, and in a matter of months, he received three or four disciplinary encounters."  (ECF No. 55-2 at 11; ECF No. 56 at 7.)  To survive summary judgment, Plaintiff must present more than speculation.  *See Boykins v. SEPTA*, 722 F. App'x 148, 158 (3d Cir. 2018) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." (quoting *Lexington Ins. Co. v. W. Pennsylvania Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005))).  In fact, the audit report and email from Birardi's supervisor indicate that Birardi did not order or conduct the audit.  (*See* ECF No. 47 at 166-89; ECF No. 46-3 at 62.)

As Plaintiff can neither establish a *prima facie* case of retaliation nor rebut Defendants' legitimate, non-retaliatory reasons for NJDOC's employment actions, summary judgment must be granted for NJDOC.

### C.  Title VII Claim: Hostile Work Environment

Plaintiff asserts that "[t]he crux of [his] complaint . . . against Birardi is that Plaintiff [w]as subjected to a hostile work environment based on his race, an act of discrimination in violation of the NJLAD." (ECF No. 55-2 at 8.)  Birardi argues that Plaintiff's Complaint did not raise claims of hostile work environment.  (ECF No. 57 at 13.)  Plaintiff's Complaint includes the words "hostile work environment" only once and mentions none of the claim's elements.

The Court concludes that Plaintiff cannot sustain a claim for hostile work environment. For a hostile work environment claim, Plaintiff needed to show "1) [that] the employee suffered intentional discrimination because of [his race], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person [of the same race] in like circumstances, and 5) the existence of *respondeat superior* liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir.

2013); *see Rios v. Meda Pharm., Inc.*, 252 A.3d 982, 987 (N.J. 2021) (describing the first element as "the complained-of conduct . . . would not have occurred *but for* the employee's" protected category) (emphasis in original).  Indeed, Plaintiff had to demonstrate facts that could suggest that his workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  *Shah v. Am. Airlines, Inc.*, Civ. No. 22-2599, 2023 WL 2945901, at *3 (3d Cir. Apr. 14, 2023) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In support of this claim, Plaintiff has not cited any new facts beyond what the Court has already addressed at length above.  Plaintiff correctly contends that an isolated incident, "if extremely serious," can support a hostile work environment claim.  *Carver v. City of Trenton*, 420 F.3d 243, 262-63 (3d Cir. 2005); *see Taylor v. Metzger*, 706 A.2d 685, 689 (N.J. 1998) ("[U]nder the chosen standard—severe or pervasive conduct—one incident of harassing conduct can create a hostile work environment.").  But, once again, none of Plaintiff's allegations creates an inference of racial discrimination.  Thus, Plaintiff's claim fails on the first element.

### D.  NJLAD Claims (Counts IV, V, VI)

Defendants argue that the Court lacks supplemental jurisdiction to decide Plaintiff's NJLAD claims because Defendants are immune from suit under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI.  "Under the Eleventh Amendment, 'an unconsenting State is immune from suits brought in federal courts by [its] own citizens.'"  *Hyatt v. Cnty. Of Passaic*, 340 F. App'x 833, 836 (3d Cir. 2009) (quoting *Edelman v. Jordan*, 415 U.S. 651, 663

(1974)).   Moreover, "the Amendment affords states and state agencies immunity from suits brought by citizens in federal court, regardless of whether legal or equitable relief is sought." *Bhimnathwala v. N.J. State Judiciary, Fam. Div.*, Civ. No. 19-21389, 2020 WL 7237947, at *7 (D.N.J. Dec. 9, 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984)), *aff'd sub nom.*, 858 F. App'x 558 (3d Cir. 2021).

Critical here, the Eleventh Amendment protects not only states, but also state agencies and state officials acting in their official capacities, "as long as the state is the real party in interest." *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir. 1989); *see Shahin v. Delaware*, 563 F. App'x 196, 198 (3d Cir. 2014) ("A suit against the States, their agencies, and their employees acting in an official capacity is also barred, because it is merely another way of pleading an action against the state."); *Hyatt*, 340 F. App'x at 836 ("Eleventh Amendment immunity applies to state entities and officials if 'the state is the real, substantial party in interest.'") (citation omitted).   "The party asserting Eleventh Amendment immunity 'bears the burden of proving its applicability.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010) (quoting *Christy v. Pa. Tpk. Comm'n*, 54 F.3d 1140, 1144 (3d Cir. 1995)).

"Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001)).

1.   NJDOC

NJDOC is entitled to Eleventh Amendment immunity as an arm of the State of New Jersey. *See Fox v. Bayside State Prison*, 726 F. App'x 865, 867-68 (3d Cir. 2018) ("The DOC is

quintessentially an arm of the state and is funded by, controlled by, and accountable to the state."); *Marsh v. Campos*, Civ. No. 19-15320, 2021 WL 1401522, at *3 (D.N.J. Apr. 14, 2021) ("This District has consistently held that NJDOC is an arm of the State of New Jersey for Eleventh Amendment purposes." (citing *Warnett v. Corr. Med. Servs.*, Civ. No. 07-1291, 2008 WL 930739, at *3 (D.N.J. Mar. 31, 2008) (collecting cases))).  The Court thus lacks jurisdiction over Plaintiff's NJLAD claims against NJDOC.

Plaintiff cites *Rudolph v. Adamar of New Jersey, Inc.*, 153 F. Supp. 2d 528 (D.N.J. 2001), and *Maliandi v. Montclair State Univ.*, 845 F.3d 77 (3d Cir. 2016), for the misplaced proposition that when the State (here, NJDOC) acts as an "employer," it has waived sovereign immunity for NJLAD purposes.  (ECF No. 56 at 11-13.)  In *Maliandi*, the Court of Appeals expressly avoided addressing "whether New Jersey has waived its Eleventh Amendment immunity from suit in federal court with regard to [plaintiff]'s NJLAD claim."  845 F.3d at 82 n.2.  On remand, the district court ruled that the university was entitled to Eleventh Amendment immunity.  *See Maliandi v. Montclair State Univ.*, Civ. No. 14-01398, 2017 WL 3023205, at *3 (D.N.J. July 17, 2017) ("Because this Court has no grounds upon which to find a waiver of [Eleventh Amendment] immunity, MSU is immune from suit under the NJLAD as well.").  In so ruling, the court rejected plaintiff's reliance on *Rudolph*, noting that since that case, the court had clarified that "*Rudolph* 'did not hold that the State of New Jersey had waived its sovereign immunity in federal court when acting as an employer.'"  *Id.* (quoting *Garcia v. Richard Stockton Coll. Of New Jersey*, 210 F. Supp. 2d 545, 550 n.4 (D.N.J. 2002)).

The Court therefore concludes that the Eleventh Amendment bars consideration of Plaintiff's NJLAD claims against NJDOC in federal court.  Thus, summary judgment is proper on Plaintiff's NJLAD claims against NJDOC.

2.   Individual Defendants

A "plaintiff cannot assert a NJLAD claim against . . . a state employee acting in his or her

official capacity." *Davenport v. New Jersey Bd. Of Pub. Utils.*, Civ. No. 18-13687, 2022 WL

3636237, at \*10 (D.N.J. Aug. 23, 2022) (quoting *Hicks v. State of NJ Dep't of Corr.*, Civ. No. 16-

0927, 2017 WL 4858122, at \*4 (D.N.J. Oct. 27, 2017)).  Accordingly, Plaintiff's NJLAD claims

against Birardi and Grade in their official capacities are barred by Eleventh Amendment immunity.

*See Hicks*, 2017 WL 4858122, at \*4 (dismissing NJLAD claim against supervisor at NJDOC after

determining that NJDOC was as an "arm of the state" for purposes of Eleventh Amendment

immunity).

Plaintiff also asserts NJLAD claims against Birardi and Grade in their individual capacities.

NJLAD provides for individual liability through "aiding and abetting." *DeSantis v. N.J. Transit*,

103 F. Supp. 3d 583, 591 (D.N.J. 2015).  Specifically, "NJLAD makes it unlawful for 'any person,

whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any

of the acts forbidden under this act.'"  *Id.* (quoting N.J. Stat. Ann. § 10:5-12I).  "To hold an

employee liable as an aider and abettor, Plaintiff must show: (1) the employer whom the defendant

aided performed a wrongful act causing an injury; (2) the defendant was generally aware of his

role as part of an overall illegal or tortious activity at the time that he provided the assistance; and

(3) the defendant knowingly and substantially assisted the principal violation."  *Id.* (citing *Cicchetti

v. Morris Cnty. Sheriff's Off.*, 947 A.2d 636, 645 (N.J. 2008)).

"[I]ndividual liability does not exist under the NJLAD absent evidence that the individual

was 'aiding and abetting' discrimination by the employer." *Hughes v. State of New Jersey, Off. of

Pub. Def./Dep't of Pub. Advoc.*, Civ. No. 11-01442, 2012 WL 761997, at \*3 (D.N.J. Mar. 7, 2012).

Most courts in this District have ruled that "[s]uch proof is impossible if the Court has no

jurisdiction over the [state] employer." *Id.*; *see Hicks*, 2017 WL 4858122, at *4 ("As the Court dismissed Plaintiff's NJLAD claim against the DOC, Plaintiff cannot prove the DOC violated the NJLAD."); *Shreve v. New Jersey Motor Vehicle Comm'n*, Civ. No. 15-7957, 2016 WL 5334661, at *5 (D.N.J. Sept. 22, 2016); *Mitchell v. New Jersey Lottery*, Civ. No. 04-896, 2006 WL 1344092, at *12 (D.N.J. May 15, 2006) ("[A]n individual employee [cannot] be found liable for discrimination under NJLAD unless the employer is first found liable." (quoting *Hanani v. State of New Jersey*, Civ. No. 03-3111, 2005 WL 1308231, at *16 (D.N.J. May 31, 2005), *aff'd sub nom.*, *Hanani v. State of New Jersey Dep't of Env't Prot.*, 205 F. App'x 71 (3d Cir. 2006))).

Thus, due to Plaintiff's failure to establish his Title VII claims[13] or the Eleventh Amendment's bar against NJLAD claims against NJDOC, the Court grants summary judgment for the individual defendants on Plaintiff's NJLAD claims.

## IV.   **CONCLUSION**

For the foregoing reasons, and other good cause shown, the NJDOC Defendants' Motion for Summary Judgment (ECF No. 45) and Birardi's Motion for Summary Judgment (ECF No. 46) are **GRANTED**.  Counts I, II, III, IV, V, and VI of Plaintiff's Complaint (*see* ECF No. 1 ¶¶ 48-74) are **DISMISSED** with prejudice.  An appropriate Order and Judgment follows.

Dated: May 31, 2023

GEORGETTE CASTNER, U.S.D.J.

---

[13]     "Under the NJLAD and Title VII, the analysis is essentially the same." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 282 n.13 (3d Cir. 2001).